UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NORTHWEST DAIRY ASSOCIATION and
DARIGOLD, INC.,

    Plaintiffs,

    v.

WESTERN CONFERENCE OF
TEAMSTERS PENSION TRUST FUND,

    Defendant.

NO. C18-1100RSL

ORDER CONFIRMING
ARBITRATION AWARD

This matter comes before the Court on "Plaintiffs' Dispositive Motion in Support of Complaint to Vacate Arbitration Award" (Dkt. # 15) and defendant's "Cross Motion for Dispositive Relief" (Dkt. # 17). Plaintiffs seek to vacate the arbitrator's findings that their "obligation to contribute" to the pension trust fund ended in 2012 and that a partial withdrawal occurred as of that date under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). The defendant trust fund seeks to have the arbitration award confirmed.

## BURDEN OF PROOF IN ARBITRATION

Pursuant to the MPPAA, disputes regarding withdrawal liability must be resolved through arbitration. 29 U.S.C. § 1401(a)(1). In resolving the dispute, the arbitrator is to presume that any determination made by the trust fund under § 1385 (which includes whether there was a partial

ORDER CONFIRMING
ARBITRATION AWARD - 1

cessation of the employer's contribution obligation) is correct "unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous." 29 U.S.C. § 1401(a)(3)(A). The Supreme Court has noted, however, that Congress used the terms "preponderance of the evidence," "unreasonable," and "clearly erroneous" in an incomprehensible way because it combined the language of trial (a burden of proof) with the language of appeal (standards of review). <u>Concrete Pipe and Prods. of Cal. v. Constr. Laborers Pension Trust for S. Cal.</u>, 508 U.S. 602, 622-25 (1993). In order to avoid the substantial question of procedural fairness that would arise if the supposedly impartial arbitrator gave too much weight to the findings of an entity which has an obvious interest in the assessment of withdrawal liability, the Supreme Court has construed § 1401(a)(3)(A) to mean that the employer has the burden "to disprove a challenged factual determination by a preponderance" of the evidence. <u>Concrete Pipe</u>, 508 U.S. at 629.[1]

## STANDARD OF REVIEW OF ARBITRATOR'S DECISION

An arbitrator's conclusions of law are reviewed de novo. <u>Penn Cent. Corp. v. W. Conference of Teamsters Pension Trust Fund</u>, 75 F.3d 529, 533 (9th Cir. 1996). An arbitrator's factual findings, on the other hand, are presumed correct and are "rebuttable only by a clear preponderance of the evidence." 29 U.S.C. § 1401(c). Whether a withdrawal within the meaning of the statute has occurred generally presents a mixed question of law and fact, where "[t]he relevant facts are about the closure of the . . . plant (such as the intent of [the employer] with

---

[1] The Supreme Court assumed that the presumption applies only to factual determinations and that the arbitrator is obligated to follow applicable statutes, regulations, court decisions, agency interpretations, and other pertinent authority when making legal determinations. <u>Concrete Pipe</u>, 508 U.S. at 621.

ORDER CONFIRMING
ARBITRATION AWARD - 2

respect to the plant, its expression of that intent, its activities while the plant was not operating, and the circumstances of the plant's reopening), while the question whether these facts amount to a 'complete withdrawal' is one of law." Concrete Pipe, 508 U.S. at 630.

## BACKGROUND

In 2010, plaintiff Darigold, Inc., a farmer-owned cooperative that produces dairy products, acquired Cream O'Weber Dairy. Cream O'Weber had a collective bargaining agreement ("CBA") with the International Brotherhood of Teamsters, Local No. 222, which obligated the employer to make contributions to the defendant trust fund. The trust separately required the employer and the union to certify that the CBA conforms to the trust's policies and to agree to be bound by the trust documents. See Employer-Union Pension Certification ("E-U Certificate") (Dkt. # 16-6 at 3-4). The E-U Certificate also reiterated that the employer is obligated to make pension contributions under the CBA and required the employer to continue to make those contributions even after the CBA expires "until such time as the undersigned either notifies the other party in writing (with a copy to the trust fund) of its intent to cancel such obligation . . . ." Dkt. # 16-6 at 3. Through its acquisition, Darigold stepped into the shoes of Cream O'Weber Dairy as to both the CBA and the E-U Certificate.

Darigold decided to close the Cream O'Weber plant and began winding down its milk production. When the CBA expired on August 31, 2011, a replacement agreement was not reached. In February 2012, Darigold asked the fund for an estimate of what its liability would be for a partial withdrawal if it were to close the plant. In or around May 2012, Darigold gave the union oral and written notice that it was closing the plant. The union, in turn, contacted the trust fund to tell it that Darigold was shutting down the operation. The fund then sent Darigold an

ORDER CONFIRMING
ARBITRATION AWARD - 3

"Account Status Certification" form, the stated purpose of which was to obtain information regarding Darigold's intentions and activities related to the work performed at the Cream O'Weber plant so the fund could determine whether withdrawal liability had been incurred under the MPPAA. Of relevance here are the following questions and responses:

| | |
|---|---|
| B. The effective date of cessation of covered operations or obligations to contribute according to our records is: | 9/18/12 |
| C.4. Have you transferred such work to another location? | Yes |
| C.5. Are you continuing to perform work of the type for which contributions were previously required at the facility where the obligation to contribute ceased? | No |

After reviewing Darigold's responses (and those provided separately by the union), the trust fund concluded that Darigold's obligation to contribute to the fund ceased in September 2012 and assessed partial withdrawal liability. Darigold requested that the fund review the assessment for a number of reasons, but did not assert that it had a continuing obligation to contribute to the fund. That argument was first raised approximately nine months before the arbitration hearing.

## DISCUSSION

A "partial withdrawal" having the potential to trigger withdrawal liability occurs when "the employer permanently ceases to have an obligation to contribute under one or more but fewer than all collective bargaining agreements under which the employer has been obligated to contribute under the plan . . . but transfers [the work for which contributions were previously required] to another location." 29 U.S.C. § 1385(a) and (b)(2)(A)(i). The parties agree that the

ORDER CONFIRMING
ARBITRATION AWARD - 4

E-U Certificate is a CBA for purposes of this provision. See Dkt. # 24 at 4; Dkt. # 26 at 5. Plaintiffs maintain that the obligation to contribute under the E-U Certificate survives despite the fact that Darigold ceased all covered operations at the Cream O'Weber plant, transferred the bargaining unit work to another location, and no longer makes any contributions to the fund related to that work. The arbitrator disagreed and found that Darigold's obligation to contribute to the fund ceased as of September 2012. For the following reasons, the arbitration award is AFFIRMED.

Plaintiffs argue that the obligation to contribute under the E-U Certificate survives because the agreement was not terminated according to its terms. The E-U Certificate provides:

> The employer agrees to pay the trust fund the pension contributions specified in the labor agreement with the union. . . . Upon the expiration of this or any subsequent labor agreement, the employer agrees to continue to contribute to the trust fund in the same amount and manner as required in the most recent expired labor agreement until such time as the undersigned . . . notifies the other party in writing (with a copy to the trust fun) of its intent to cancel such obligation . . . .

Dkt. # 16-6 at 3. The "undersigned" parties are the union and the employer. Darigold points out that the notifications it provided to the union and the trust fund simply announced the upcoming plant closure: they did not expressly state an intent to cancel its obligation to contribute to the fund. Darigold also notes that its responses on the Account Status Certification were equivocal in that they indicated an intent to cease covered operations <u>or</u> to cease obligations to contribute.

The arbitrator was not persuaded and found that the communications between the trust fund, the employer, and the union substantially complied with the termination provision of the E-U Certificate. Substantial performance is a question of fact. DC Farms, LLC v. Conagra Foods

ORDER CONFIRMING
ARBITRATION AWARD - 5

Lamb Weston, Inc., 179 Wn. App. 205, 221 (2014).[2] The arbitrator's factual finding is therefore entitled to a presumption of correctness, and Darigold bears the burden of disproving that factual determination by a preponderance of the evidence. Concrete Pipe, 508 U.S. at 629. It has not done so.

The arbitrator found that Darigold's statements and conduct conveyed its intent to cancel its obligation to contribute to the fund and that the communications substantially complied with the E-U Certificate termination provision. These conclusions are supported by the record, and Darigold has not disproved the arbitrator's findings by a preponderance of the evidence. Darigold relies almost exclusively on the fact that its communications with the union and the fund were in terms of its operational plans. Given the nature and context of those communications, however, this fact is insufficient to rebut the presumption of correctness that attach to the arbitrator's factual findings. Darigold's closure notices were not only intended to inform the union that is members' services would no longer be needed at the Cream O'Weber plant, but were also intended to inform the fund that Darigold would cease contributing to the fund once bargaining unit work ceased in September 2012. Darigold knew, as did the union and the fund, that once the Cream O'Weber facility was shut down and the last employee let go, there would be no bargaining unit work performed, the number of hours used to calculate contributions would be zero, and the employer would no longer have any obligation to contribute to the fund. Following the cessation of operations, Darigold stopped sending monthly

---

[2] The parties have not identified a conflict of law regarding substantial compliance. The Court notes that even if the substantial compliance analysis is informed by Utah law, it remains a question of fact. Grassy Meadows Sky Ranch Landowners Ass'n v. Grassy Meadows Airport, Inc., 283 P.3d 511, 518 (Utah App. 2012).

ORDER CONFIRMING
ARBITRATION AWARD - 6

reporting forms to the fund and made no further contributions.

The objective evidence supports the arbitrator's finding that Darigold's statements were intended to announce both the cessation of operations and the end of Darigold's obligation to contribute to the fund. From a subjective standpoint, plaintiffs offered no evidence from which one could reasonably conclude that Darigold subjectively believed that it would remain obligated to contribute to the fund after September 2012. In fact, the record supports a contrary finding, namely that Darigold believed the plant closure and transfer of work ended its responsibilities to the fund and, concomitantly, raised the specter of withdrawal liability. First, Darigold requested that the fund provide an estimate of its potential withdrawal liability months before it ceased operations. Second, Darigold knew that the fund would use the Account Status Certification form to determine whether withdrawal liability should be assessed, but its experienced human resources manager responded to the fund's inquiries without making any attempt to clarify that Darigold did not intend to cancel its obligation to contribute even though all bargaining unit work at the plant would cease. Third, Darigold did not, in fact, have any obligation to contribute to the fund after September 2012 even if its lawyers could later articulate a theoretical legal obligation. Finally, Darigold raised a number of arguments to avoid payment when withdrawal liability was assessed, but did not assert that it had a continuing obligation to contribute to the fund until shortly before arbitration. As the arbitrator found, when Darigold notified the union and the fund that it was planning to close the Cream O'Weber plant, it was announcing that its obligation to contribute to the fund was at an end.[3]

---

[3] These facts distinguish Central States, Se. and Sw. Areas Pension Fund v. Schilli Corp., 420 F.3d 663 (7th Cir. 2005). In Schilli, the employees voted to decertify the union as their representative, thereby terminating the CBA. The employer continued to conduct business as usual, however,

ORDER CONFIRMING
ARBITRATION AWARD - 7

Plaintiffs argue that the substantial performance doctrine "is not legally acceptable" because "ERISA case law has developed a strict construction standard for contract review." Dkt. # 15 at 16-17. The case on which plaintiffs rely does not support this proposition, instead stating that ERISA issues "must be resolved by consulting ordinary principles of contract law." Central States v. Standard Elec., 87 F. Supp.3d 810, 814 (N.D. Ill. 2015) (internal quotation marks and citations omitted). "The general rule with respect to compliance with the terms of a bilateral contract is not strict compliance, but substantial compliance." DC Farms, 179 Wn. App. at 220 (citing 15 Richard A Lord & Samuel Williston, A Treatise on the Law of Contracts § 44:52, at 217 (4th ed. 2000)). Any technical deficiency in the notices (like the fact that the notice to the trust was not an exact copy of the notice to the union) does not invalidate or rebut the arbitrator's finding of substantial compliance.

//

//

//

//

---

employing the same people in the same jobs and submitting monthly reports and contributions to the trust fund. In that context, the employer made no announcement at all, much less one that could be construed as a statement of intent to cancel the obligation to make trust fund contributions.

ORDER CONFIRMING
ARBITRATION AWARD - 8

The arbitrator's factual determinations regarding Darigold's intent to cancel its obligation to contribute to the fund and its substantial compliance with the written notice provision of the E-U Certificate are presumed correct, and Darigold has not disproved the challenged factual determinations by a preponderance of the evidence. The arbitration award is therefore CONFIRMED. Plaintiffs' motion to vacate the award (Dkt. # 15) is DENIED and the fund's cross-motion (Dkt. # 17) is GRANTED. The Clerk of Court is directed to enter judgment in defendant's favor.

Dated this 8th day of July, 2019.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER CONFIRMING
ARBITRATION AWARD - 9